Andrew James **LEONARD**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 17939.

United States Court of Appeals
Ninth Circuit.

Nov. 19, 1963.

John G. Clancy, San Francisco, Cal., for appellant.

Warren C. Colver, U. S. Atty., and James R. Clouse, Jr., Asst. U. S. Atty., Anchorage, Alaska, for appellee.

Before ORR, HAMLEY and KOELSCH, Circuit Judges.

ORR, Circuit Judge.

Appellant came into possession of two United States Treasury checks, one drawn in favor of a Phillip Mercer and one drawn in favor of a Jasper Johnson, Jr. In what manner the checks were obtained by appellant is not disclosed by the record but it is not contended that his possession was legitimate.

Having possession, appellant conceived the idea of realizing a gain therefrom, and in doing so to stand in the shadows as far as possible and induce others to perform the criminal acts. Pursuant to a criminal design he persuaded one Romeo Watkins to endorse the names of the payee thereof on the back of each check. Appellant retained the checks and then in furtherance of his fraudulent design he conceived and put into operation a scheme to get the checks cashed.

Appellant, still standing in the shadows, approached one Marcus Coleman with the idea of getting Coleman's cooperation in cashing the checks. Appellant knew that some identification would be necessary on the part of the person endeavoring to cash the checks, so he induced Coleman to take out a fishing license in the fictitious name of "Al Day".

This seems to be a favorite means of identification accepted by business places. Appellant had correctly appraised the situation. Coleman endorsed the name "Al Day" on the back of the check made payable to Phillip Mercer and cashed it at Monty's Department Store. While Coleman was cashing the check appellant was sitting in his car parked across the street. After cashing the check Coleman returned to the car in which appellant was sitting and gave the money received from cashing the check to appellant. A portion thereof was given by appellant to Coleman as his "split".

Appellant then handed to Coleman the check made payable to Jasper Johnson, Jr., upon which the endorsement had previously been forged by Watkins. They drove to Caribou's Department Store. Coleman again endorsed the name of "Al Day" on the check and presented it for cashing, using the fictitious fishing license. He received the money, returned it to appellant and received his split.

In due time the fraudulent cashing of the checks came to light. An investigation was launched and eventually the spotlight was focused upon appellant as the prime mover in the criminal transaction. The evidence was presented to a grand jury, and an indictment was returned charging appellant with several violations of 18 U.S.C.A. § 495, and of conspiring to violate 18 U.S.C.A. § 495 in violation of 18 U.S.C.A. § 371. A trial was had and appellant was found guilty on five counts. Certain other counts were dismissed. The counts of the indictment on which conviction was had charged only the forgery of the name "Al Day" on the checks, and the uttering of that forgery as true. The prior forgery of

the payees' names by Romeo Watkins was not mentioned.

During the trial Romeo Watkins was permitted to testify that he did, at appellant's urging, make the endorsements. The admission of this evidence is urged as one of the main errors committed by the trial court. Appellant says that it disclosed a separate and independent crime, the admission of which is frowned on by the law.

 There are well established exceptions to this rule. The questioned evidence clearly falls within at least one of them, to-wit, where a common scheme and design is shown and in the train of circumstances the commission of another crime may appear the evidence is admissible.[1] There can be no question here but that the inducement of Watkins by appellant to forge the names of Jasper Johnson, Jr., and Phillip Mercer on the back of the checks was one step used by him in facilitating the cashing of the checks.

 Appellant attacks the credibility of the witnesses, impugns their motives, and attempts to implant the idea that he was framed. The short answer to this contention is that those were matters for the jury. They evidently credited the testimony of the government witnesses, and since there is nothing inherently improbable about any of the evidence we are in no position to disturb the jury's finding in that regard.

It is contended that the two counts of the indictment relating to forgery should have been dismissed because no "purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money" was shown, as required in the first paragraph of 18 U.S.C.A. § 495. It is argued that the addition of the name "Al Day" as a secondary endorser was done to induce the department stores to cash the checks, and not to obtain money from the United States. The forgery of the name "Al Day", it is said, not being the name of the payee, could not have been reasonably intended or expected to cause the United States to part with its money.

 However, the same contention with regard to the counts involving the uttering of the forgery is not, nor could it be successfully made. The offense of uttering is covered by the second paragraph of 18 U.S.C.A. § 495, and only requires an "intent to defraud the United States", not an intent to obtain a sum of money therefrom. In Pina v. United States, 165 F.2d 890 (9th Cir. 1948), it was held that an "intent to defraud" means not an intent to cause a monetary loss, but only an intent to interfere with or impair a governmental function, as shown by what would normally result from the act done. The uttering of the checks with the forged name of Al Day did interfere with the governmental function of paying its employees and thus falls within the Pina case. The convictions on the uttering and conspiracy counts are therefore valid.

Appellant was sentenced to five year terms on each count, to run concurrently. No fines were imposed. It thus becomes unnecessary to pass upon the validity of the contentions on the forgery counts, for the five year sentences on uttering and conspiracy would in any event remain in force and effect.[2]

Affirmed.

1. Johnston v. United States, 22 F.2d 1 (9th Cir. 1927) ; cert. denied 276 U.S. 637, 48 S.Ct. 421, 72 L.Ed. 745 (1928) ; Bracey v. United States, 79 U.S.App.D.C. 23, 142 F.2d 85 (1944), cert. denied 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944) ; 1 Wigmore, Evidence §§ 215, 216 (3d ed., 1940) ; 1 Wharton, Criminal Evidence §§ 233, 240 (12th ed. 1955).

2. Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943) ; Ogden v. United States, 303 F.2d 724 (9th Cir. 1962) ; Wilson v. United States, 316 F.2d 212 (9th Cir. 1963).