Samuel T. SCHARVER, Appellant,

v.

STATE of Alaska, Appellee.

No. 2526.

Supreme Court of Alaska.

March 21, 1977.

Barbara Miracle and Phillip P. Weidner, Asst. Public Defenders, and Brian C. Shortell, Public Defender, Anchorage, for appellant.

Glen C. Anderson, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

RABINOWITZ, Justice.

Appellant Samuel Scharver brings this appeal from his conviction of the crime of burglary not in a dwelling.[1] After a court trial Scharver was found guilty and the superior court entered an order deferring imposition of sentence for five years and placing Scharver on probation for the period of the deferral.

At approximately 6 a. m. on August 11, 1974, Officer Richard Coffey was on patrol in a vehicle which was unmarked as a police vehicle except for the word "traffic" on the back.[2] As Officer Coffey approached the Alaska Industrial Hardware warehouse, he noticed shattered glass in proximity to the front door of the warehouse and observed two individuals inside the warehouse who were running toward a side exit. He also spotted another individual (Scharver) crouched behind a car which was parked in

1. AS 11.20.100.

2. The vehicle also had an outside spotlight and a red light on the dashboard which were not illuminated. As he approached the building in his vehicle, Officer Coffey did not use his siren or turn on any of the vehicle's lights.

front of the warehouse. As he exited from his vehicle Coffey saw the two individuals who had been inside the building emerge and begin running toward a nearby wooded area. According to Coffey he yelled, "Police officer, halt," and thereafter made two additional requests of the fleeing individuals to halt.[3] After the third command Officer Coffey fired a single revolver shot which hit Scharver in the leg. Scharver then limped to the side of the building where he was given first aid by the officer and arrested.[4]

The prosecution's evidence also showed that prior to approaching the warehouse premises on the morning in question Scharver and the other two individuals had been drinking.[5] As they approached the warehouse, the possibility of burglarizing the premises was mentioned. According to Charles C.'s testimony (one of the two others participating in the burglary), Scharver had "half-heartedly" agreed to "go along" with the burglary. Charles C. further asserted that the idea of committing the burglary was "a mutual agreement" among the three participants. Roger M., (the third participant) testifying as a defense witness, stated in part that he thought all three of the persons involved had agreed to commit the burglary.

Scharver testified that he neither planned the burglary nor gave any encouragement or support to the idea. He admitted proceeding to the warehouse with the other two after the suggestion of breaking into the premises had been advanced. Scharver further testified that he never went inside the warehouse or physically assisted his two companions in gaining entry into the build-

ing. He attributed his presence on the scene at the time of Officer Coffey's arrival to his own indecision regarding whether to return to the car the three had been riding in or to walk home. Scharver also contended that he did not warn Roger and Charles of Officer Coffey's arrival at the Warehouse premises.[6]

One of the four specifications of error in this appeal is that the superior court erred in refusing to grant Scharver's motion for dismissal of the indictment on the ground that the prosecution had failed to comply with the mandatory discovery requirement of Criminal Rule 16(b)(5).[7] Defense counsel had made a general request for all discoverable information shortly after the indictment was returned in late August. However, defense counsel was not furnished with any police reports until the latter part of the first week in November. At this time non-jury trial proceedings had commenced, but the taking of testimony did not occur until six days after Scharver's counsel had received the reports.

We have previously held that dismissal of the charges is an inappropriate remedy for the type of discovery problem of which Scharver complains. In *Des Jardins v. State*, 551 P.2d 181, 187 (Alaska 1976), we stated that:

> The proper procedure for a trial court faced with prosecution failure to disclose to the defense evidence that it is required to provide, until just before it plans to use such evidence, is to grant a continuance long enough to allow the defense attorney adequate time to prepare. (footnote omitted)

---

3. Appellant Scharver had by this time left his crouched position behind the vehicle and had begun running in the direction of the other two individuals.

4. Shortly after Scharver's arrest the other two individuals were arrested.

5. Scharver was 19 years old at the time of this incident; the two people with him were juveniles.

6. Both Roger and Charles gave testimony to the effect that Scharver had not entered the

building or performed any physical acts which aided them in gaining entry into the building.

7. Where pertinent Rule 16(b)(5) states:

Whenever defense counsel designates and requests production of material or information which would be discoverable if in the possession or control of the prosecuting attorney, the prosecuting attorney shall use diligent good faith efforts to make such material available to defense counsel. . . . .

In the case at bar the superior court denied the motion to dismiss for failure to make discovery but went on to inform counsel that it " . . . would consider a motion for continuance, if you need it, based on your newly discovered information . . . ." The record shows that defense counsel at no time thereafter requested a continuance. In these circumstances we conclude that the superior court did not err in refusing to dismiss the indictment because of the prosecution's asserted failure to comply with the mandatory discovery requirements of Criminal Rule 16(b)(5).

Scharver has also raised as a separate specification of error the superior court's failure to grant his motion to dismiss the indictment based on its purported insufficiency. Appellant's primary contention here is that the indictment did not provide sufficient notice to him of the crime with which he was charged.[8] More particularly, the indictment charged Scharver as a principal. Defense counsel maintained that, if anything, Scharver was merely an accessory, and that the prosecution's failure to give notice as to the theory under which it intended to try Scharver was reversible error.

■ Alaska's statutory law as well as our prior decisions in this area require rejection of appellant's assertion of error. AS 12.15.010 of Alaska's Code of Criminal Procedure provides in pertinent part:

The distinction between an accessory before the fact and a principal, and between principals in the first and second

degree is abrogated; and all persons concerned in the commission of a crime, whether they directly commit the act constituting the crime or . . . aid and abet in its commission, shall be prosecuted, tried, and punished as principals.

Scharver's counsel maintains that the abrogation of the distinction between accessories and principals mandated by AS 12.15.010 applies only to punishment. We think this position is untenable and agree with the state's contention that to "prosecute" one as a principal includes charging him as a principal. Additionally, we have previously held that an accused who is indicted as a principal is subject to conviction upon evidence which shows that he only aided and abetted. In *Ransom v. State*, 460 P.2d 170, 172 (Alaska 1969), we said:

In Alaska the legislature has abolished the distinction between principals in the first and second degree and accessories before the fact. Under a similar statute federal courts unanimously agree that one indicted as a principal may be convicted of the crime on evidence which shows that he merely aided and abetted. In those states that have abolished the common law distinction between principals and accessories before the fact, the same rule prevails.[9] (footnotes omitted)

We thus conclude that there is no merit in appellant's assertion that the indictment was insufficient.[10]

Scharver also contends that the superior court committed reversible error by virtue

---

8. At trial defense counsel also asserted that the evidence before the grand jury was insufficient to support the indictment. In response to this aspect of Scharver's motion to dismiss the indictment, the superior court stated, "I reviewed the entire tape and find that the evidence there is sufficient . . . to support the indictment."

In regard to this appeal we note that appellant has not designated as part of the record the proceedings which were held before the grand jury. Appellate Rule 9(d) provides in part:

All matters essential to the decision of the questions presented by the appeal must be included in the record on appeal . . . and the court will consider nothing but those parts of the record so designated. . . .

9. See also *Tarnef v. State*, 512 P.2d 923 (Alaska 1973); *Trounce v. State*, 498 P.2d 106 (Alaska 1972); *Gray v. State*, 463 P.2d 897 (Alaska 1970); *Fajeriak v. State*, 439 P.2d 783 (Alaska 1968).

10. Inherent in our holding is our further conclusion that two subsidiary arguments advanced by appellant under this specification of error are also without merit. More particularly, at trial Scharver's counsel requested alternative relief in the form of a protective order preventing the state from introducing evidence at variance with the indictment (*i.e.*, that Scharver aided and abetted). Our decisional law previously referred to and AS 12.15.010 dispose of any contention that Scharver was entitled to such a protective order.

of its admission of certain statements he gave to law enforcement personnel in violation of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Tarnef v. State*, 512 P.2d 923 (Alaska 1973).

After Officer Coffey administered first aid to Scharver's wound, he took out his Miranda card and read to Scharver his *Miranda* rights. Scharver was asked if he understood his rights and nodded affirmatively. Officer Coffey then asked Scharver, having these rights in mind, did he wish to talk to him. Scharver answered, "No." Scharver was then removed to a hospital where he underwent an operation to remove the bullet in his leg. At about 7:30 p.m. on the same day he was visited in his guarded hospital room by Officer Carlson who began to advise Scharver of his rights. During the advisement Scharver informed him that "I understand them, I've been arrested before." Officer Carlson then asked Scharver if he understood his rights, and he said, "Yes." Receiving this response the officer asked Scharver it he would like to tell "his side of the story." Scharver then made a statement to him. Upon defense counsel's objection, Officer Carlson's testimony as to Scharver's statement was ultimately excluded by the trial judge.[11]

> Appellant also advances the claim that the indictment is to "serve as an indication that the grand jury in its deliberations did in fact consider each and every element of the crime . . . ." We fail to find any merit in this argument because the indictment in the case at bar meets the requirements of Criminal Rule 7(c) which provides in part:
> The indictment . . . shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. . . .
> Further, Crim.R. 6(m) provides in part:
> Upon request, a defendant shall be entitled to listen to the electronic recording of the grand jury proceedings and inspect all exhibits presented to the grand jury. Upon further request he may obtain a transcript of such proceedings and copies of such exhibits. . . .

**11.** It appears that the statement was excluded because of the trial judge's concern with Scharver's post-operative condition.

The next morning at approximately 11 a.m. Scharver was visited by Officer Gray. This officer testified that after entering Scharver's room he commenced advising Scharver of his rights. About halfway through the officer's attempt to advise Scharver of his rights, Scharver stated that he knew his rights. Officer Gray informed him that he was obligated to advise him of his rights and proceeded to complete his advisement. The officer then asked Scharver whether he understood these rights and, upon receiving an affirmative response, asked ". . . well, what happened that caused you to get shot in the leg . . ." Scharver then made several statements to Officer Gray, the admission of which serves as the focal point for Scharver's assertions of constitutional error under the holdings of *Miranda* and *Tarnef*.

Our exhaustive review of the record in the case at bar has convinced us that it is unnecessary to address the varied and interesting legal attacks Scharver has unleashed against the superior court's admission of Officer Gray's testimony concerning Scharver's statements.[12] For in the total evidentiary context of this non-jury trial we have concluded that any error in the admission of such statements was harmless beyond a reasonable doubt.[13]

**12.** Appellant contended in part that he was not given adequate *Miranda* warnings; that there was no proof that he explicitly waived his *Miranda* rights; that there was a lack of proof of a knowing and intelligent waiver on his part of his *Miranda* rights; that this court should reject the "erosion" of *Miranda* evidenced by the Supreme Court's opinion in *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); and that his statements to Officer Gray should have been excluded because they were tainted by the prior "inadmissible interrogation" by Officer Carlson. We have assumed for the purpose of this discussion that Scharver's constitutional rights under *Miranda* and *Tarnef* were infringed.

**13.** *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The statement to which Gray was permitted to testify over Scharver's *Miranda* objections was to the effect that the accused had been with the two juveniles who were later observed in the burglarized warehouse and that he was present at the scene in the manner described by Officer Coffey. The only aspect of Officer Gray's questioned testimony which was not a reiteration of facts which had previously been testified to by Officer Coffey was the following:

He asked me what was gonna happen. I told him he'd have to go to court on it. He said he knew that, but he wanted to know what he was gonna get; and I told him that would be up to the court.

The superior court in announcing its general finding of guilt [14] went on to elaborate in some detail the basis of its determination. In part the court concluded that:

The total circumstance of the car being parked some distance from the building and all three of the young men walking over to the building, the inconsistencies in the testimony of all three of the young men, which I won't detail . . . the demeanor of all three of the witnesses. I feel they were deliberately lying; that Mr. Scharver, the defendant, is the least able as a prevaricator . . . I, frankly, didn't believe their testimony; I didn't believe the defendant's testimony . . . .. The flight of Mr. Scharver is only a circumstance. . . . The story . . . [by Roger M.] that he didn't see the officer until the car had pulled up and was nearly stopping or creeping . . . doesn't jibe with the testimony of Officer Coffey, which I do believe, that at his first observation the young men within the building were in full flight.

Of particular significance here is that portion of the superior court's opinion which dealt with the potentially prejudicial part of Officer Gray's testimony. In this regard the trial court stated, in part:

The only thing in Officer Gray's testimony that I consider worth anything at all— *anything* at all is the question by the defendant to him concerning the consequences of his action; and, again, that's only a very minimal part of my consideration. (emphasis in original)

Subsequently, in ruling on various post-conviction motions, the superior court reiterated its view of this segment of Officer Gray's testimony, stating:

I think the only portion of that statement that had any value at all, so far as the state's case is concerned, was the question of what did—Mr. Scharver's question of Officer Gray, what did he think that the consequences were going to be; and that was of minimal consideration by me.[15]

Given our review of the record, the trial court's explanation of its finding of guilt and the weight the trial court accorded Officer Gray's questioned testimony, we hold that the admission of such testimony was harmless error beyond a reasonable doubt.[16]

■■ In his remaining specification of error Scharver asserts that the superior court erred in refusing to grant a mistrial on the ground that his statement to Officer Gray, which was admitted into evidence, was the product of pre-arraignment delay. Criminal Rule 5(a)(1) provides:

Except when the person arrested is issued a citation for a misdemeanor and immediately thereafter released, the arrested person shall be taken before the nearest available judge or magistrate without unnecessary delay. Unnecessary delay within the meaning of this section

---

**14.** Crim.R. 23(c) provides in part:

In a case tried without a jury the court shall make a general finding and shall, in addition, on request, find the facts specially. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact appear therein.

The record indicates that no request was made by defense counsel to have the superior court find the facts specially.

**15.** Concerning the questioned statement, defense counsel argued at one point that "[h]e asked what was going—what he was going to get, and that's very ambiguous statement."

**16.** Again we note that we have assumed for the purposes of our discussion of this specification that Scharver's constitutional rights under *Miranda* and *Tarnef* were impinged upon.

(a) is defined as a period not to exceed twenty-four hours after arrest, including Sundays and holidays.[17]

The state concedes that Scharver was not arraigned within twenty-four hours of his arrest due to his hospitalization. Assuming an unexcused violation of Criminal Rule 5(a)(1), our previous holding that the admission of Officer Gray's testimony was harmless error beyond a reasonable doubt is dispositive of this particular contention. Additionally, we note that the issue of pre-arraignment delay was raised for the first time subsequent to the superior court's determination of Scharver's guilt of the offense of burglary not in a dwelling. We view defense counsel's failure to raise this point during the trial,[18] and the broad discretion granted Alaska's trial courts in determining whether a new trial should be declared,[19] as additional grounds for affirming the superior court's denial of Scharver's motion for a mistrial.

Affirmed.

**17.** Appellant asks this court to follow the Supreme Court of the United States decisions in *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), and *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), and hold that since Scharver's statements to Officer Gray were obtained more than 24 hours after his arrest they were "per se involuntarily" obtained.

**18.** *Lanier v. State*, 486 P.2d 981 (Alaska 1971).

**19.** *Tarnef v. State*, 492 P.2d 109, 117 (Alaska 1971); *Anderson v. State*, 438 P.2d 228, 233 (Alaska 1968); *Maze v. State*, 425 P.2d 235 (Alaska 1967).