Joseph FIELDS, Appellant,

v.

STATE of Alaska, Appellee.

No. 3811.

Supreme Court of Alaska.

May 29, 1981.

**2.** See ante at 44 n.18.

David C. Backstrom, Deputy Public Defender, Fairbanks, and Brian Shortell, Public Defender, Anchorage, for appellant.

Timothy Petumenos, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

Joseph Fields was convicted of fraud in the sale of securities. The questions on appeal are (1) whether a mistrial should have been granted because an unrelated criminal charge was referred to in the testimony of a witness, (2) whether the testimony of a witness should have been excluded because a statement of the witness was not revealed by the prosecution in advance of trial, and (3) whether the sentence imposed was excessive.

Fields was charged with three counts of fraudulently selling security interests in oil and gas leases in violation of AS 45.55.010 and three counts of selling unregistered securities in violation of AS 45.55.070. Originally Fields was charged by the same indictment with issuing checks with insufficient funds. This charge stemmed from the writing of checks to the Chena View Hotel in June, July, and August of 1976. Upon a pre-trial motion, the check utterance charges were severed on the ground that they had no relevance to the securities fraud case. At the end of trial Fields was convicted of each of the six counts of securities fraud.

I

At the commencement of trial on the securities fraud charges, the trial judge granted the defense a protective order to prevent any mention at trial of the pending check charge. The state presented four witnesses who testified that Fields befriended them, gained their confidence and persuaded them to purchase a percentage of

override interests[1] in certain oil leases. During the course of these transactions, Fields allegedly made repeated representations that he was worth millions and would personally guarantee all investments. Each purchaser invested between $800 and $10,000, which they were told was being placed in an escrow account. The purchases were made in February, March, and April of 1976. Fields in fact never owned the override interests he sold and none of the witnesses ever received a return of his investment.

Fields testified that he believed he had acquired a percentage of override interest in the oil leases in exchange for his efforts in finding a buyer for them so that he was under the impression that he actually owned the interests that he sold. Fields admitted that he had never been a millionaire, and claimed that he never represented himself as one except to tell his friends that he believed his override interest was worth millions.

Despite the protective order, mention of the check charge was inadvertently made at trial. Prosecution witness David Curwen of the Fairbanks Police Department, when asked when the defendant was indicted, responded:

> "On November 4, 1976, the case I should say, was issue—from is—issuing checks without sufficient funds. The case was combined . . . ."

A defense motion for a mistrial was promptly made and denied. The jury was never instructed to disregard the testimony.

In denying the defense motion for mistrial, the trial judge ruled that the evidence of the check charge was in fact relevant and admissible.[2] He determined that the evidence was relevant to the question of Fields' solvency, as well as to prove the existence of a larger continuing plan or scheme, and to establish motive and intent. Fields contends that this ruling was erroneous and that a mistrial should have been granted.

■ It is by now firmly rooted in Alaska that evidence of other crimes or prior misconduct is not admissible to show bad character or propensity to commit crime.[3] Such evidence may be admissible, however, where relevant to a material fact in issue, such as motive, intent, knowledge, plan or scheme,[4] and when its probative value outweighs its prejudicial impact.[5] Hence, we must initially determine whether evidence that Fields was charged with writing bad checks was relevant to any material issue at his trial for securities fraud, other than his general character or propensity to commit crimes.

■ The court found, and the state now argues, that the check charge was relevant to the question of Fields' solvency, since it was alleged that Fields falsely represented himself to be a millionaire to prospective investors. The state contends that evidence that Fields was charged with cashing checks with insufficient funds is proof that Fields was not in fact the millionaire he

---

1. An override was explained as a retained interest in any proceeds obtained under the lease from future oil or gas production.

2. The court ruled, however, that the protective order would remain in effect for the rest of the trial.

3. *See Oksoktaruk v. State*, 611 P.2d 521 (Alaska 1980); *Harvey v. State*, 604 P.2d 586, 589 (Alaska 1979); *Frink v. State*, 597 P.2d 154, 169 (Alaska 1979); *Eubanks v. State*, 516 P.2d 726, 729 (Alaska 1973); 1 J. Wigmore, Evidence § 193, at 643 (3d ed. 1940).

   The rule has now been codified in Alaska R. Evid. 404(b):

   > "*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

   Further, we note that the mere fact of a charge or indictment is not proof of guilt.

4. 1 J. Wigmore, *supra* note 3, § 215–17, at 710–19.

5. Alaska R. Evid. 403 provides in part:

   > "Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice . . . ."

held himself out to be. Although, strictly speaking, evidence that one's checking account was overdrawn may be relevant to the issue of solvency, here the slight probative value such evidence may have is far outweighed by its potential for prejudice. The bad checks were all allegedly written after the securities fraud transactions.[6] Evidence of Fields' insolvency in June is of questionable probative value on the issue of his financial worth in February through April. It is entirely possible that Fields may have depreciated his checking account considerably between April and June, especially considering the testimony of his extravagant life-style.

Moreover, the state had already established, through far more reliable and less prejudicial evidence, that Fields was in fact insolvent at the time he purportedly represented himself to be a millionaire. A banker at the First National Bank of Fairbanks testified that in February of 1976, Fields' bank account was overdrawn by 21 cents. We stated in *Freeman v. State*:

> "Evidence of other offenses committed by the accused will always be potentially prejudicial; for this reason, before such evidence is admitted, care must be taken to ascertain whether it is actually necessary in the circumstances of the particular case."

486 P.2d 967, 977 (Alaska 1971). Here evidence of the check charge was of limited probative value and cumulative on the issue of Fields' insolvency and was, therefore, unnecessary.

The state also urges that proof of the check charges was relevant, and therefore admissible, to show an overall fraudu-

lent scheme. Evidence of other offenses or misconduct is often relevant to show that the charged offense was part of an overall scheme or plan to defraud.[7] However, in order to be admitted for this purpose, the offenses must be "so related to each other that proof of one tends to prove the other." 1 C. Torcia, Wharton's Criminal Evidence § 248, at 565 (13th ed. 1972). The state cites a number of securities fraud cases upholding the admission of prior uncharged offenses to prove a scheme to defraud. In all of these cases, however, the uncharged offense involved a similar transaction and was clearly part of the overall fraudulent scheme. For example, in *United States v. Austin*, 462 F.2d 724 (10th Cir.), *cert. denied*, 409 U.S. 1048, 93 S.Ct. 518, 34 L.Ed.2d 501 (1972), the defendant participated in numerous transactions involving securities and mail fraud, only some of which were charged. The Tenth Circuit held that the uncharged transactions were properly admitted to show the existence of a common plan to defraud, since each transaction involved substantially the same pattern and mode of operation by the defendant.[8] Here, the only connection between the check charge and the securities transactions is that the checks were written at the Chena View Hotel, where Fields negotiated many of the securities sales. The checks, however, were written months after the security sales were consummated and appear to be totally unrelated to the security transactions.

The state presented no evidence at trial suggesting that the check offenses were part of an overall fraudulent scheme. It now asserts that Fields continued to lull "the investors into a false sense of security"

---

6. The securities sales for which Fields was being charged took place in February, March, and April of 1976, whereas the bad checks were made out in June, July, and August of 1976.

7. *See, e. g., Leonard v. United States*, 324 F.2d 911, 913 (9th Cir. 1963); *Griggs v. United States*, 158 F. 572, 576–77 (9th Cir. 1908); 1 J. Wigmore, *supra* note 3, §§ 215–16, at 710–17.

8. Similarly, both *United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir.), *cert. denied*, 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 47 (1975), and

*Suetter v. United States*, 140 F.2d 103, 107 (9th Cir. 1944), were securities fraud cases in which the challenged evidence was testimony of similar, yet uncharged security sales. *See also Leonard v. United States*, 324 F.2d 911, 913 (9th Cir. 1963), in which testimony that the defendant had induced another to forge a check was held to be admissible against the defendant, in his prosecution for secondary endorsement and uttering of forged checks, to show an overall scheme since the first forgery was part of a design to ultimate cashing of the checks.

by presenting himself to be a millionaire up until his departure from Alaska in October, 1976. However, this was not alleged in the complaint and no proof of a continuing plan to defraud after the sales were completed was offered at trial. There being no evidence that the check cashing was part of an overall plan to defraud, or related in any material way to the securities sales, we cannot uphold the ruling of admissibility on this theory.

█ Finally, we are not persuaded that evidence of the check charge was admissible on the issue of intent or motive. Although Fields' intent was a controlling issue at trial, "[i]t is normally required that in order to be admissible on the issue of intent the prior misconduct of the accused must be similar to the crime charged and not too remote in time." *Freeman*, 486 P.2d at 977.[9] In all the cases cited by the state where evidence of other misconduct was admitted on the issue of intent, the uncharged acts were similar in nature and somehow related to the charged offense.[10] In the case at bar, there is an absence of any affirmative link between the securities sales and the check charges. To imply that because the defendant may have engaged in fraudulent conduct in a wholly separate transaction, he therefore had a fraudulent intent here demands precisely the type of inference the law condemns. The reasonable inference to be drawn from proof of the check charge is that Fields is a person of dishonest character who had a propensity to commit fraudulent acts. This is the "type of leap of faith the evidence rules have been designed to prevent." *Eubanks v. State*, 516 P.2d 726, 729 (Alaska 1973).

█ Having concluded that evidence of the pending check cashing charge was not admissible for any of the purposes advanced by the trial court or the state, we hold that the evidence falls within the proscription of Alaska Rule of Evidence 404(b). We must now determine whether the improper reference to this inadmissible evidence was such as to have a substantial influence on the jury's verdict. *Love v. State*, 457 P.2d 622, 631 (Alaska 1969).

In reviewing the record we are impressed by the strength of the state's case, as shown by all of the evidence adduced by the state. Measured against that we find this truncated portion of inadmissible testimony to be relatively minuscule in impact. Accordingly, in this context we conclude that the error was harmless.

█ We wish to caution, as we have in the past, that the prosecution should take great care to inform its witnesses not to refer to other unrelated crimes the defendant may have committed, especially where, as here, a protective order has been issued against mention of another criminal charge.[11] Where such evidence does inadvertently come before the jury, the trial court's determination upon a motion for mistrial will be given deference on review.

---

9. *Accord, Oksoktaruk v. State*, 611 P.2d 521 (Alaska 1980); *Gould v. State*, 579 P.2d 535, 538 (Alaska 1978); *Eubanks v. State*, 516 P.2d 726, 729 (Alaska 1973); 1 C. Torcia, Wharton's Criminal Evidence § 245, at 554–56 (13th ed. 1972).

10. In *Harper v. United States*, 143 F.2d 795 (8th Cir. 1944), although the court held that evidence outside the scheme charged may be admitted for the purpose of showing intent, it appears they were referring to matters outside the scope of the indictment and not matters which are totally unrelated to the charged offense. There, evidence of another securities sale, which was not one of the securities alleged to have been fraudulently sold, was held admissible on the issue of intent because it tended to elucidate or clarify certain false statements made by the defendant at trial. *Id.* at

803. *See also United States v. McDonald*, 576 F.2d 1350, 1356 (9th Cir. 1978), *cert. denied*, 439 U.S. 830, 99 S.Ct. 105, 58 L.Ed.2d 124 (1979).

11. We commend the trial court for cautioning the prosecuting attorney and Detective Curwen regarding the importance of adhering to the protective order. After denying the motion for mistrial, but before reconvening the jury, the court admonished the district attorney that "there's just no substitute for doing your work ahead of time. You should have sat down and talked with Officer Curwen here; told him they had been severed, and that he's not to mention that other case" and instructed Officer Curwen to limit his responses to the specific question asked of him.

While it might have been better for the court here to have given a cautionary instruction to the jury concerning the questioned portion of Detective Curwen's testimony, it is not important in the context of this case, in view of our holding that the error in allowing that testimony to remain in evidence was harmless.

## II

On the opening day of trial, on a Monday, the prosecutor disclosed that on the previous Friday he had learned that there was an electronically taped statement of a witness, John McGowan, and that the prosecutor intended to call McGowan as part of his case in chief. The prosecutor stated that he had tried to inform defense counsel about the taped statement on the previous Friday but had been unable to reach her. Apparently the tape had been made by a securities examiner who was not assigned to investigate the case, and its existence had not been known earlier to the investigator in charge of the case.

The court recessed in order to allow defense counsel an opportunity to listen to the tape. When the court later reconvened it inquired into the possible prejudice to the defense because of not having had earlier access to the tape. The court ruled that McGowan's testimony would be admissible and that defense counsel would be given an opportunity to interview McGowan before he testified.

It should be noted that the defense requested the exclusion of McGowan's testimony, but did not move for a continuance. The prosecutor had agreed at the outset

that he would not call McGowan until the close of his case, and McGowan did not testify until Wednesday.

The state concedes that under Alaska Criminal Rule 16(b) the existence of the McGowan tape should have been made known in advance of trial,[12] but argues that this was an inadvertent discovery omission, that the court acted properly in the circumstances, and that the defense did not suffer substantial prejudice. We agree with the state's position.

■ In these circumstances, the normal course is to grant a continuance of sufficient length to allow defense counsel adequate time to prepare to meet the previously undisclosed evidence. *Des Jardins v. State*, 551 P.2d 181, 187 (Alaska 1976); *Scharver v. State*, 561 P.2d 300, 301 (Alaska 1977). Moreover, a continuance need not be granted automatically in the absence of a request for it by the defense. *Scharver*, 561 P.2d at 302.

■ Our review of the record does not reveal substantial prejudice to the defendant. We conclude that there was no error in the court's refusal to exclude the testimony of the witness.

## III

Fields was sentenced to serve three years on each of the three counts of sale of fraudulent securities, with each sentence to be served consecutively. He additionally was sentenced to serve three years on each of three counts of sale of unregistered securities, with each sentence to be served consecutively. Each of these total nine year

---

12. Alaska Criminal Rule 16(b)(1)(i) provides:

"*Disclosure to the Accused.*

(1) *Information Within Possession or Control of Prosecuting Attorney.* Except as is otherwise provided as to matters not subject to disclosure and protective orders, the prosecuting attorney shall disclose the following information within his possession or control to defense counsel and make available for inspection and copying:

(i) The names and addresses of persons known by the government to have knowledge of relevant facts and their written or recorded statements or summaries of statements;"

Alaska Criminal Rule 16(b)(4) provides:

"(4) *Information Within Possession or Control of Other Members of Prosecuting Attorney's Staff.* The prosecuting attorney's obligations extend to material and information in the possession or control of

(i) members of his staff, and

(ii) any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to his office."

terms were to run concurrently. The court then suspended four of the total of nine years as to each concurrent sentence, with Fields to be on probation during the suspended period. The judgment also orders that during the probationary period of his sentence Fields shall pay into court the sum of $25,500, to be disbursed to the victims of his offenses.

In reviewing a sentence for excessiveness, our general standards require a consideration of the nature of the crime, the defendant's character, and the need for protecting the public. *State v. Chaney*, 477 P.2d 441, 443 (Alaska 1970). We must also consider the total sentence imposed, including any period of suspension. *Nattrass v. State*, 554 P.2d 399, 401 (Alaska 1976).

Fields was born in Texas in 1940. He left high school at age 17, after his father died. He attended an electronics school, and has worked in that field at certain times. He served in the United States Army from 1964 to 1967, when he was honorably discharged. He has worked at various jobs such as in grocery stores, in a paint shop, as an automobile salesman, and as a freelance artist. He does not suffer from alcohol or drug problems. He has no previous criminal convictions, except a $32 fine for what must have been an insignificant offense. There is no indication that he has been a professional criminal previous to the commission of the instant offenses.

From the presentence report and presentence psychiatric evaluation it appears that Fields' potential for rehabilitation is good.

In his sentencing remarks, the trial judge indicated a strong belief that a substantial sentence was warranted, and a belief that Fields was lacking in remorse, after preying upon his victims.

We agree with the state's contentions that "white collar" crimes must be taken seriously, and that sophisticated schemes to defraud should be deterred. But our weighing of the various factors applicable to this case leads to the conclusion that this sentence was disproportionately severe and that the court was clearly mistaken in imposing it.[13] See *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

In our opinion, the maximum sentence should not exceed a total of six years, with three years to be suspended and the defendant to be on probation during the suspended period. The provision for a $25,500 fine, to be paid to the victims of Fields' offenses during the period of probation was, in our opinion, proper.

The conviction is affirmed, but the case is remanded for the entry of an amended judgment in conformity with this opinion.

AFFIRMED IN PART, AND REMANDED.

MATTHEWS and BURKE, JJ., dissenting in part.

MATTHEWS, Justice, dissenting.

I agree with parts II and III of the majority opinion. With respect to part I, I agree that the trial court erred in concluding that the evidence that Fields had been charged with issuing checks without sufficient funds was admissible.[1] However, I do not believe that the error was harmless, and would therefore reverse.

The critical issue leading to Fields' conviction was whether he actually intended to defraud anyone, with Fields testifying that he did not and the prosecution contending that he did. Any evidence suggesting that Fields had a dishonest character could be extremely damaging to his defense. Since cashing checks with insufficient funds con-

---

**13.** Although exact comparisons cannot be made see *Huff v. State*, 598 P.2d 928 (Alaska 1979); *Amidon v. State*, 565 P.2d 1248 (Alaska 1977); *Andrews v. State*, 552 P.2d 150 (Alaska 1976).

**1.** The evidence in question was presented in the following colloquy:

Q. (Prosecutor) And do you know when Mr. Fields was indicted?
A. On November 4, 1976, the case I should say, was issue—from issuing checks without sufficient funds. The case was combined....

notes the same type of dishonest intent that is required in the crimes for which Fields was charged, such evidence could not help but undercut his defense. Wigmore warns of the prejudicial effect of this type of evidence:

> The deep tendency of human nature to punish, not because our victim is guilty this time, but because he is a bad man and may as well be condemned now that he is caught, is a tendency which cannot fail to operate with any jury, in or out of court.

1 J. Wigmore, Evidence § 57 at 456 (3rd ed. 1940). Because Fields' credibility and integrity was crucial to his defense and because the evidence admitted has a strong tendency to discredit these qualities, I cannot fairly say that the evidence did not appreciably affect the jury's verdict,[2] and would therefore reverse.

I reach this conclusion in full awareness of the rule that the trial court's determination of a motion for mistrial is entitled to considerable deference. *Peters v. Benson*, 425 P.2d 149, 152 (Alaska 1967). The trial court is better situated than are appellate judges reviewing a cold record to determine the impact on the jury of the evidence. Here, the trial judge concluded that, except for his belief that the evidence in question was independently admissible, he would have been compelled to grant a mistrial.[3] He stated:

> [I]f I hadn't been able to fit it in my own mind into two or three of those exceptions, I think it clearly goes to the intent question as to whether or not he intentionally defrauded, if I hadn't been able to fit it into those exceptions after looking at the rule, why, I'd had no choice but to grant a mistrial.

BURKE, Justice, dissenting in part.

I am unable to agree that the superior court was clearly mistaken as to the length of its sentence. *McClain v. State*, 519 P.2d 811 (Alaska 1974). Otherwise, I concur in the opinion of the majority.

2. This is the harmless error formulation which we adopted in *Love v. State*, 457 P.2d 622, 631–32 (Alaska 1969).

3. That conclusion, of course, is in conflict with the majority's view that the evidence was not prejudicial.