Donald L. BAKER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–5408.

Court of Appeals of Alaska.

Oct. 20, 1995.

Hearing Denied Jan. 16, 1996.

**480**

Marcia E. Holland, Assistant Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for Appellant.

William H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

MANNHEIMER, Judge.

Donald L. Baker was convicted of second-degree robbery, AS 11.41.510(a), following a jury trial in the Fairbanks superior court. He appeals both his conviction and the sentence he received. We affirm.

According to the government's evidence, Baker and two friends, John Stanfill and Jason Frazier, decided to get some free pizzas by telephoning a Pizza Hut restaurant, ordering pizzas for home delivery, and then robbing the delivery person when he came to deliver their order. Baker's first attack on his conviction concerns the issue of whether he acted as a principal or an accessory in this robbery. Baker's second attack on his conviction concerns the issue of whether the State presented sufficient independent evidence to corroborate the testimony of Baker's accomplices.

Stanfill, testifying under a grant of immunity, admitted taking part in the robbery. He described the planning of the robbery and the role each person played in the crime. Stanfill testified that he phoned in the pizza order and that he told the restaurant to deliver the pizzas to a neighboring apartment building. The three friends then stationed themselves near the entrance to this neighboring building. Stanfill waited on the stairs, Frazier near the door, and Baker in the hallway. Stanfill and Frazier had bandannas over their faces for concealment; Baker wore a dark blue ski mask.

The delivery person, James Seymour, arrived with the pizzas but was unable to find the person who had placed the order. As Seymour turned to leave the building, the three robbers made their move. Seymour testified he was struck by a man who emerged from beneath a set of stairs. He described his assailant as a light-complexioned black male wearing a one-holed dark blue ski mask and dark gloves.

Upon being struck, Seymour fell to the ground, dropping the pizzas. The man continued to hit Seymour. After the third blow, Seymour shouted to his assailant that he could take the pizzas. In a blur, Seymour saw someone kneel down, take the pizzas, and flee the building. Seymour was never able to positively identify the person who hit him.

Seymour's testimony that he was struck by a man who emerged from underneath the stairs, in combination with Stanfill's description of where each of the three men waited (Stanfill on the stairs, Frazier near the door, and Baker in the hallway), tended to identify Baker as the robber who struck Seymour— the robber whom Seymour saw emerge from "beneath … the stairs". Moreover, when Stanfill was asked, "What happened right when the robbery took place?", Stanfill replied that he "saw the pizzas fall to the ground" and that he and Frazier grabbed the pizzas and ran. This response again raised the inference that Baker had been the one who physically accosted Seymour. However, Stanfill was never asked directly whether Baker was the one who hit Seymour.

Stanfill described how, after the robbery, the three men brought the pizzas back to Stanfill's apartment. There the robbers began to eat the pizzas, aided by Stanfill's younger sister and her girlfriend. However, their meal was interrupted when Stanfill's mother returned to the apartment. She had been visiting neighbors in an adjacent building when she heard that a pizza delivery person had been robbed. Suspecting that her son might be involved, she returned home. When she found Stanfill and his friends eating pizzas, she angrily told Stanfill, Frazier, and Baker to leave.

Frazier, who testified in exchange for favorable plea bargains in various cases pending against him, also admitted taking part in the robbery. He recounted that it was Baker who first proposed the robbery and that it was Stanfill who left the apartment and placed the call to Pizza Hut. Frazier corroborated Stanfill's description of each man's location as they waited for the pizza delivery person to arrive. Like Stanfill, Frazier never directly testified that it was Baker who struck Seymour. Frazier did say that, as Seymour turned to leave the building with the undelivered pizzas, Frazier and Stanfill "grabbed the pizza, and we ran. Then all three of us ran back to [Stanfill's] apartment." Frazier stated that the three men (along with Stanfill's sister and her friend) set about eating the pizzas until Stanfill's mother returned home and told the men to leave.

■ Baker did not testify at trial. Through cross-examination of Seymour, Stanfill, and Frazier, and in final argument, Baker's attorney suggested that Baker had not participated in the robbery. In particular, the defense attorney argued that Stanfill and Frazier might be lying about Baker's involvement in order to shield an unidentified friend and in order to obtain favorable treatment from the State for their own crimes (by appearing to aid the government's efforts to bring the third robber to justice).

### The Propriety of Instructing the Jury on Accomplice Liability [1]

#### Proceedings in the Trial Court

Toward the end of Baker's trial, as the court and the parties discussed potential jury instructions, the question arose whether the jury should be instructed on accomplice lia-

---

1. As explained in more detail later in this opinion, the common law classified the parties to a crime into three categories: "principals in the first degree" (persons who personally committed the actus reus of the crime), "principals in the second degree" (aiders or abettors who were present at the commission of the crime) and "accessories before the fact" (aiders or abettors who were not present at the commission of the crime). The term "accomplice" was a broader term that referred to any person punishable for the crime (that is, all principals and all accesso-

ries before the fact). R. Perkins & R. Boyce, *Criminal Law* (3rd ed. 1982), p. 727. Or, in the words of Alaska Pattern Criminal Jury Instruction 1.20, an accomplice is "[any] person who in some manner … aids, abets, assists, or participates in a criminal act" with the requisite culpable mental state(s).

The phrase "accomplice liability" refers to the rule that a defendant, if he or she is found to have been an accomplice to a crime, can be held vicariously responsible for the acts of any other accomplice.

bility. Included among the packet of proposed jury instructions was a two-page instruction numbered "9". The first page of this instruction described the law relating to accomplice liability (that is, the circumstances under which a person can be held criminally accountable for the conduct of another). In the second page of the instruction, the jurors were told that, if they found that one or more of the witnesses at Baker's trial were accomplices to the crime under consideration, then they should view the testimony of these witnesses with distrust.

Here is the discussion that took place regarding Instruction No. 9:

THE COURT: What about [Instruction] Number 9? I mean, the State hasn't alleged an accomplice theory, right?

PROSECUTOR: Well, ... Your Honor, for the State's position, we're committed to the proposition that Mr. Baker is guilty as a principal.

THE COURT: True. So, you don't need Number 9, right?

PROSECUTOR: ... I don't, but apparently—I don't know if the court would desire to give it in relation to ...

THE COURT: Well, I'm going to deal with that. Let me—we don't need Number 9 in terms of the State's theory of the case, correct?

PROSECUTOR: I believe that's correct.

DEFENSE COUNSEL: Judge, I guess I'm just concerned about the second to the last paragraph. Then give it. And that's my only ...

THE COURT: Okay. But ...

DEFENSE COUNSEL: As far as [the] remainder of the instruction ...

THE COURT: You don't care one way or the other.

DEFENSE COUNSEL: No. Just— you know, once a crime has been committed, concealment of one's knowledge does not make for an accomplice. A mere presence at the scene.

THE COURT: So, you don't care if I give Number 9, if we take out that paragraph.

DEFENSE COUNSEL: Well, I want that [paragraph] in, actually[.] That's the only one I want in. The rest of it I don't care about. If that makes sense.

THE COURT: Oh. Well, I'll just give 9 the way it is, then.

UNIDENTIFIED SPEAKER: All right.

THE COURT: [Turning to the next page of the packet] The next one doesn't have a number on it. Oh, wait a minute. That might be part of Number 9. Anyway, it doesn't have a number on it. That's basically (indiscernible) the cautionary instruction concerning accomplices. What do counsel want to do about it?

PROSECUTOR: I don't have any objection to it.

THE COURT: The ... unnumbered one.

DEFENSE COUNSEL: The unnumbered one? That's fine.

As can be seen from this quoted portion of the proceedings, Baker's attorney voiced no objection when the trial judge declared his intention to give the jury this accomplice liability instruction. Nevertheless, Baker now argues on appeal that the jury's receipt of this instruction prejudiced the fairness of his trial.

Baker points out that the accomplice liability instruction could be expected to play two roles during jury deliberations. First, the instruction informed the jury of the circumstances under which Stanfill and Frazier should be considered "accomplices", thus obliging the jury to view their testimony with distrust. Second, the instruction informed the jury of the circumstances under which Baker could be held accountable for Stanfill's and Frazier's conduct. To the extent that Instruction 9 filled the first of these roles, Baker contends that it was unnecessary. And, to the extent that Instruction 9 filled the second of these roles, Baker contends that it deprived him of a fair trial.

Baker concedes that, because Stanfill and Frazier were self-admitted accomplices to the robbery, Baker wished the jury to be told that their testimony should be viewed with distrust. However, Baker contends that this

could have been done without informing the jury of all the rules regarding accomplice liability. Baker suggests that, since the two men's complicity was undisputed, the trial judge could simply have instructed the jury that, as a matter of law, Stanfill and Frazier were accomplices. *See Mahle v. State,* 371 P.2d 21, 25 (Alaska 1962), as later clarified in *Flores v. State,* 443 P.2d 73, 78–79 (Alaska 1968).

Standing by itself, this objection to the instruction is meritless. Both Stanfill and Frazier confessed on the stand to participating in the robbery. Regardless of whether the trial judge might have instructed the jury that Stanfill and Frazier were accomplices as a matter of law, the jurors clearly reached the same conclusion when they applied the test set forth in Instruction 9.

Baker's main objection to Instruction 9 is that it allowed the jury to convict him of robbery under a complicity theory even after the prosecutor announced that the State viewed Baker as a "principal", not an "accomplice".[2] Baker points out that, in the portion of the proceedings quoted above, the prosecutor assured the trial judge that an accomplice liability instruction was not necessary under the State's theory of the case.

Based on this exchange between the prosecutor and the court, Baker argues that the accomplice liability instruction was intended solely to inform the jury that Stanfill's and Frazier's testimony should be distrusted, and that the instruction was not intended to flesh out the law relating to Baker's criminal liability for the robbery. Baker asserts that both his attorney and the trial judge failed to perceive that Instruction 9 supplemented the jury's instructions concerning the scope of Baker's criminal liability. Baker further asserts that the fairness of his trial was prejudiced when the prosecutor, during final argument, suggested to the jury that Baker could

be convicted of robbery even if the State failed to prove that Baker was the man who struck Seymour, so long as the State proved that Baker was one of the three robbers.

The prosecutor's main theory during final argument was that Baker had been the robber who struck Seymour. However, the prosecutor also suggested a fall-back position:

> [W]hen you plan a robbery, when you talk about it and you go with your cohorts, and either by your presence or [by] what you do you help them out—if you encourage, and aid and abet, in any way, the people who participate—they're all just as guilty. In this case, the question is, ... who [was] the one that did the punching? Let's presume ... that you believe that Don Baker was there, and he wasn't the one who did the hitting, but he [was] just the one that did the grabbing of the pizza. We submit that's not the case. But if you choose to believe that it was Jason Frazier who did the hitting, [if] you believe that Don Baker was there and ... all he did was grab pizza and run, he's just as guilty. He's just as guilty. And he must be found guilty, if that's what you find. We [nevertheless] submit to you that what he did, in his participation, was to wear that ski mask and punch James Seymour. That was his part.

Baker's attorney did not object to this argument. In fact, during his own ensuing argument to the jury, Baker's attorney reminded the jury of the prosecutor's argument and suggested that the prosecutor, by raising accomplice liability, was "doing a little backing and filling" because the State had a "very, very weak case".

Defense counsel's main contention was that Baker had not participated in the robbery at

---

**2.** As explained in footnote 1, the common law used the term "accomplice" to encompass *any* party to a crime, whether a principal or an accessory. The prosecutor at Baker's trial apparently was using "accomplice" to mean any person who did not personally commit the actus reus—in common-law terminology, either a "principal in the second degree" or an "accessory before the fact". This same use of the word "accomplice" is found in judicial decisions. For

example, in *Morris v. State,* 630 P.2d 13, 15–16 (Alaska 1981), the Alaska Supreme Court stated that "there is no distinction between princip[al]s and accomplices under Alaska law. ... The indictment, therefore, was sufficient to put Morris on notice that he could be found liable under evidence showing that he was a principal or under evidence showing that he only acted as an accomplice."

all. However, the defense attorney also addressed Instruction No. 9 and accomplice liability in his closing argument:

> Lest I forget—and this instruction is given to you primarily as a way of dealing with the testimony of ... of Mr. Frazier and Mr. Stanfill. But, this is important, because of recent attempts at backing and filling, as detected from [the prosecutor's] opening comments here today. Instruction Number 9. Mere foreknowledge ... of the criminal plans of others, and concealment of that knowledge, alone will not suffice for accomplice liability, will not suffice to make somebody guilty of a crime. The instruction goes on to say that once a crime has been committed, concealment of one's knowledge of the crime does not make one an accomplice. Mere presence at the scene of the crime is not, in itself, enough to make one an accomplice. This may be of some significance to you in arriving at a verdict in this case, because of a potential attempt on the part of [the prosecutor] to deviate from what he has announced quite clearly as his theory of this case, in terms of what he says—what he said he was going to prove that my client did.

On appeal, Baker contends that even though his trial attorney failed to object to the wording of Instruction 9 and failed to object to the prosecutor's argument concerning accomplice liability, it was nonetheless plain error to allow the jury to consider Baker's guilt under a complicity theory after the State had announced that it viewed Baker solely as a principal.

When the issue is whether the government's proof at trial varied from the theory presented at grand jury, many courts hold that a defendant who fails to object at trial to the purported variance will be deemed to have waived any such claim. *See United States v. Garguilo,* 554 F.2d 59, 63 (2nd Cir.1977); *Harrison v. Commonwealth,* 559 S.W.2d 744, 745 (Ky.App.1977). We need not decide whether to adopt such a rule in this case because, even evaluating Baker's claim under a plain error standard, Baker has failed to show plain error.

### The Distinction Between Principals and Accessories at Common Law, and the Alaska Law Abolishing this Distinction

The common-law distinction between principals and accessories was abrogated in Alaska almost 100 years ago. On March 3, 1899, the United States Congress enacted "An Act to punish crimes in the District of Alaska and to provide a code of criminal procedure for said district". Ch. 429 Laws 1899. Section 58 of that earliest Alaska criminal code provided—in fact, mandated—that "all persons concerned in the commission of a felony ... be indicted [and] tried ... as principals":

> That the distinction between an accessory before the fact and a principal, and between principals in the first and second degree in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the crime or aid and abet in its commission, though not present, must be indicted, tried, and punished as principals, as in the case of a misdemeanor.

Thomas H. Carter, *Laws of Alaska* (1900), Code of Criminal Procedure, Section 58. With no change in language, this provision was recodified in § 2167 Compiled Laws of Alaska 1913, and again in § 5228 Compiled Laws of Alaska 1933, and again in § 66-9-23 Alaska Compiled Laws Annotated 1949. Following statehood, this provision was carried forward (with a slight modification of its wording) as AS 12.15.010. (The text of former AS 12.15.010 is quoted in *Ransom v. State,* 460 P.2d 170, 172 n. 5 (Alaska 1969).)

To understand what this statute was designed to do, we must briefly review the common law defining the parties to a crime. At common law, a person who personally committed the actus reus of the crime was a "principal in the first degree". Any person who was present at the commission of the crime and who aided or abetted the commission of the crime was a "principal in the second degree". Anyone who aided or abetted the crime before it was committed and who was not present at the commission of the crime was an "accessory before the fact". R. Perkins & R. Boyce, *Criminal Law* (3rd ed. 1982), pp. 735–748.

At common law, "the distinction between principals in the first degree and those in the second degree [was] one of fact rather than of legal consequence". *Perkins & Boyce*, p. 738. A defendant who was indicted as a principal in the first degree could be convicted even though the proof established that he acted as a principal in the second degree, and vice-versa.

> It [was] not necessary for the [indictment] to disclose whether the defendant [was] a principal in one degree or the other. A principal in the second degree [could] be charged in the indictment either as having committed the felony or as ·having been present aiding and abetting another in the. commission thereof, and if the indictment specifically charge[d] one as the perpetrator and the other as the abettor, both [could] be convicted although the proof establishe[d] that the one charged as abettor was in fact the perpetrator, while the other was present aiding and abetting him.

*Perkins & Boyce*, p. 752.

However, the common law required that an indictment clearly specify whether a defendant acted as a principal or an accessory. A defendant might escape criminal liability altogether by creating a reasonable doubt as to whether he had been a principal or an accessory (*i.e.*, whether he had been present at the commission of the crime or not). *Id.*, pp. 754–55. The statutory abrogation of the distinction between principals and accessories was intended to change this rule of pleading and to avoid this potential result.

Applying these common-law definitions to Baker's case, if Baker was one of the three men who waited in ambush for the pizza delivery person, then he was a principal in the robbery. If Baker either struck the delivery person or helped to carry away the pizzas, he was a principal in the first degree—since the actus reus of robbery requires· both an assault and the taking (or attempted taking) of property. *See* AS 11.41.510(a). If Baker was present but only

provided aid or encouragement to the enterprise, then he was a principal in the second degree.

As just explained, the common law saw no legal distinction here. A common-law indictment would not have needed to specify which of these roles Baker played. And at trial, as long as the State established that Baker was present at the commission of the robbery and either personally performed some part of the actus reus or aided or abetted those who did, Baker could be convicted of the robbery.

The result would have been the same under Alaska's former statutes abrogating the distinctions between principals and accessories. In *Scharver v. State*, 561 P.2d 300 (Alaska 1977), the defendant was indicted for burglary; the State's theory was that Scharver, along with two cohorts, had broken into a warehouse. Scharver, who was captured as he fled from the scene of the crime, asserted that he was innocent. Scharver admitted that his two friends had spoken about burglarizing the warehouse, and Scharver also admitted that he accompanied his two friends to the warehouse. However, Scharver insisted that he did not go inside and that he did not assist his companions in their criminal endeavor. *Id.* at 301.

. As recited in the supreme court's opinion, "the indictment charged Scharver as a principal" in the burglary. *Id.* at 302. Apparently, the judge at Scharver's trial allowed the case to go to the jury under the alternative theory that, even if Scharver did not enter the warehouse, he might still be an accessory to the burglary. This led Scharver's attorney to call for dismissal of the indictment:

> Defense counsel maintained that, if ... Scharver was merely an accessory, [then] the prosecution's failure to give notice as to the theory under which it intended to try Scharver was reversible error.

*Scharver*, 561 P.2d at 302.[3] Scharver's attorney also asked the superior court to enter a

---

**3.** The defense attorney's argument had no basis at common law. Even if Scharver had not entered the warehouse but had merely stood guard outside while his friends burglarized the premises, Scharver would still be a principal (in the second degree), not an accessory, because he was "present" at the commission of the crime:

> In the words of Blackstone, often quoted by the courts, "presence need not always be an actual and immediate standing by, within sight or hearing of the fact; but there may be also a

protective · order barring the government from introducing evidence "at variance with the indictment"—*i.e.*, evidence that Scharver aided or abetted the burglary. *Id.* at 302 n. 10. The supreme court rejected Scharver's argument:

> Alaska's statutory law as well as our prior decisions in this area require rejection of appellant's assertion of error. AS 12.15.010 [abrogates] . . .
>
>> [t]he distinction between an accessory before the fact and a principal, and between principals in the first and second degree[;] and all persons concerned in the commission of a crime, whether they directly commit the act constituting the crime or . . . aid and abet in its commission, shall be prosecuted, tried, and punished as principals.
>
> Scharver's counsel maintains that the abrogation of the distinction between accessories and principals . . . applies only to punishment. We think this position is untenable[,] and we agree with the state's contention that to "prosecute" one as a principal includes charging him as a principal. . . . [W]e have previously held that an accused who is indicted as a principal is subject to conviction upon evidence which shows that he only aided and abetted. [*See*] *Ransom v. State*, 460 P.2d 170, 172 (Alaska 1969) [.]

*Scharver*, 561 P.2d at 302. The supreme court reaffirmed this principle of law in *Morris v. State*, 630 P.2d 13, 15–16 (Alaska 1981):

> [Even though the defendant understood the indictment to charge him as a principal, not an accessory] there is no distinction between princip[al]s and accomplices under Alaska law. . . . The indictment, therefore, was sufficient to put Morris on notice that he could be found liable under evidence showing that he was a principal or under evidence showing that he only acted as an accomplice. *See Scharver v. State*, 561 P.2d 300, 302 (Alaska 1977). Morris does not contend that he was misled as to what facts the state intended to prove, only that he thought those facts were going to be used under instructions which would omit mention of accomplice liability. Thus, we conclude that there was no error.

Thus, for almost a century, Alaska law has recognized no distinction between principals and accessories—no distinction in the manner they are charged, tried, or punished. Both this court and the Alaska Supreme Court have repeatedly declared "that a defendant charged as a principal may be convicted as an [accessory, and] the converse is also true." *Miller v. State*, 866 P.2d 130, 137 (Alaska App.1994), *citing Scharver v. State*, 561 P.2d at 302. *See Totemoff v. State*, 866 P.2d 125, 129 (Alaska App.1993) (the jury need not unanimously agree on whether the defendant participated in the crime as a principal or an accessory), *reversed on other grounds*, —— P.2d ——, Opinion No. 4276 (Alaska, October 20, 1995). Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* (1986), § 6.6(d)(2), Vol. 2, p. 131.[4]

---

constructive presence, as when one commits a robbery or murder, and another keeps watch or guard at some convenient distance." . . . The typical example of constructive presence is that of a "sentinel" stationed outside to watch, while his associates enter a building for the purpose of robbery or burglary.
*Perkins & Boyce*, p. 741.
As explained above, the rules of common-law pleading did not require the government to specify whether a defendant was a principal in the first or a principal in the second degree. Thus, even at common law, Scharver had no variance claim.

**4.** *See also United States v. Peterson*, 768 F.2d 64 (2nd Cir.1985), *cert. denied* 474 U.S. 923, 106 S.Ct. 257, 88 L.Ed.2d 264; *Lampkins v. Gagnon*, 539 F.Supp. 359 (E.D.Wis.1982), *aff'd* 710 F.2d 374 (7th Cir.1983), *cert. denied*, 464 U.S. 1050,

104 S.Ct. 729, 79 L.Ed.2d 189 (1984); *State v. Moriarty*, 87 Or.App. 465, 742 P.2d 704 (1987); *State v. McInelly*, 146 Ariz. 161, 704 P.2d 291, 293 (App.1985); *State v. Wheeler*, 109 Idaho 795, 711 P.2d 741 (App.1985); *State v. Wixon*, 30 Wash.App. 63, 631 P.2d 1033 (1981); *People v. Naranjo*, 200 Colo. 11, 612 P.2d 1106, 1109 (1980); *Bowen v. State*, 606 P.2d 589 (Okla.Crim. 1980); *Holland v. State*, 91 Wis.2d 134, 280 N.W.2d 288 (1979), *cert. denied* 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980); *Neilson v. State*, 599 P.2d 1326 (Wyo.1979), *cert. denied*, 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980); *People v. Pepper*, 568 P.2d 446, 449 (Colo.1977); *People v. Burgess*, 67 Mich.App. 214, 240 N.W.2d 485 (1976); *State v. Carothers*, 9 Wash.App. 691, 514 P.2d 170 (1973), *aff'd* 84 Wash.2d 256, 525 P.2d 731 (1974), *overruled on other grounds* in *State v. Harris*, 102 Wash.2d

When the Alaska Legislature revised the criminal code in 1980, it abandoned the labels "principal" and "accessory" in favor of a more straightforward approach. Former AS 12.15.010, the statute abrogating the distinction between principals and accessories, was repealed. *See* § 21, ch. 166 SLA 1978. In its place, AS 11.16.100 states the general rule of criminal liability without reference to the terms "principal" and "accessory":

A person is guilty of an offense if it is committed by the person's own conduct[,] or by the conduct of another for which the person is legally accountable under AS 11.16.110, or by both.

The legislative commentary to this statute explains:

AS 11.16.100 restates the basic principle of criminal law that criminal liability is based upon conduct. When liability exists, it is immaterial whether the elements of the crime are satisfied by the defendant's own behavior, or by the behavior of another person for which he is accountable[,] or by both.

1978 Senate Journal, Supplement No. 47 (June 12), p. 1.

 Thus, while Alaska law no longer uses the terms "principal" and "accessory" to describe the theories under which a person may be held responsible for a crime, we readily conclude that the revised criminal code was not intended to reintroduce the distinctions between principals and accessories before the fact. Under Alaska's current criminal code, just as under Alaska's former criminal law, when an indictment alleges that the defendant personally committed the acts constituting the crime, the defendant is on notice that he or she may also be convicted under a theory of accomplice liability if the State establishes that the defendant is responsible for the acts of others under AS 11.16.110.

Baker nevertheless argues that once the prosecutor announced his theory of the case (that Baker was the one who struck the robbery victim), Baker was entitled to have his case submitted to the jury without reference to any theory of accomplice liability. Baker relies on the Alaska Supreme Court's

decision in *Michael v. State*, 805 P.2d 371 (Alaska 1991).

In *Michael*, the defendant and his wife were indicted for assaulting their child. Because it was unclear which spouse actually attacked the child, Michael was indicted both as a principal and, alternatively, as an accessory. At trial, the State relied on yet another theory of culpability: that even though Michael did not strike the child and even though he neither aided nor abetted his wife's abuse of the child, Michael could nevertheless be convicted of assault for failing to perform his parental duty to protect the child from the assaults of others (that is, for failing to take action when he knew that another person was assaulting the child). Michael objected that this theory of liability varied materially from the theories considered by the grand jury. The superior court overruled Michael's objection and, ultimately, convicted him under this theory.

This court upheld Michael's conviction. *See Michael v. State*, 767 P.2d 193, 201–03 (Alaska App.1988). This court assumed, for purposes of argument, "that it was necessary for the state to present [this breach-of-duty theory of liability] to the grand jury". Nevertheless, this court concluded that the evidence before the grand jury had supported this theory of prosecution and that the prosecutor had mentioned a parent's duty to protect a child. Thus, this court concluded, Michael had been on notice that he might be convicted under this alternative theory. *Id.* at 202.

The supreme court disagreed. The court ruled that, even though "Michael's failure to carry out his parental duty was clear from the [grand jury] evidence", and even though "the district attorney handling the case ... told the grand jury that one in Michael's position could be guilty of assault for failing to protect his child", "[t]he fact remains ... that the grand jury made no such charge in the indictment". *Michael*, 805 P.2d at 374.

*Michael* is distinguishable from Baker's case. The legal question presented in *Michael* was whether an indictment charging a parent with participating in an assault on his

148, 685 P.2d 584 (1984); *People v. Ruscitti*, 27 Ill.2d 545, 190 N.E.2d 314 (1963).

or her child (either as a principal or an accessory) should be construed to include the alternative theory that the parent was guilty for failing to protect the child from someone else's assault. This theory of parental liability had never been expressly recognized in Alaska until this court's decision in *Michael*. The supreme court held, based on the grand jury record in Michael's case, that Michael's indictment could not be construed to include this theory.

■ Baker's case, however, presents no issue outside traditional notions of accomplice liability. Under either of the State's theories of this case—that is, whether Baker personally struck the pizza delivery man or was present only to help carry away the pizzas—Baker was a "principal" in the commission of the robbery. Even at common law (before the statutory abrogation of the distinction between principals and accessories), Baker would have no variance claim. He certainly has none now. We reject Baker's argument that the indictment failed to put him on notice that he might be convicted under the rules of accomplice liability codified in AS 11.16.110(2).

■ As a fall-back position, Baker asserts that even if the indictment put him on notice that he might be convicted under an accomplice liability theory, he was nevertheless misled when the prosecutor announced at trial that the State viewed Baker as a principal, not an "accomplice".[5] There are two major problems with this argument.

■ First, Baker's trial attorney never suggested that he was surprised or prejudiced when the jury was asked to consider Baker's accomplice liability. As noted above, the defense attorney did not object to Instruction 9 (which described the rules governing a defendant's vicarious liability for the acts of others). Baker suggests that his attorney viewed Instruction 9 as simply a way for the jury to understand that Stanfill's and Frazier's testimony had to be viewed with distrust; Baker asserts that his attorney failed to perceive that Instruction 9 might also be used to determine Baker's guilt. The record belies this claim. It is clear that Baker's attorney perceived that accomplice liability was an issue in the case, because he himself proposed a jury instruction on Baker's guilt under a complicity theory.[6] Moreover, the defense attorney did not object when the prosecutor explicitly argued accomplice liability to the jury. In fact, the defense attorney took advantage of the prosecutor's argument by asserting that the prosecutor was now "backing and filling" in an attempt to salvage a weak case.

5. As explained above, even if Baker did not strike the pizza delivery man, he remained a "principal" (as that term was defined at common law) so long as he was present at the commission of the robbery and, acting with the requisite culpable mental state, he aided or abetted that crime. It appears that when the prosecutor stated that he viewed Baker as a "principal", he was not referring to this common-law definition but rather was expressing his view that Baker was the one who struck the delivery person. However, as noted earlier in this opinion, robbery requires an assault *and* a taking (or attempted taking) of property. Under the State's theory of the case, no single defendant committed the entire robbery. Rather, Baker struck the delivery person and Stanfill and Frazier took the pizzas. Thus, they were all "principals in the first degree": each of the three men personally committed a portion of the actus reus.

6. Defendant's Proposed Instruction No. 6 read:
A person is legally accountable for the conduct of another person constituting an offense if, with intent to promote or facilitate the commission of the offense, the person aids or abets the other person in planning or committing the offense.
In order to establish that Don L. Baker is legally accountable in this case, the State must prove beyond a reasonable doubt the following:
First, that the event in question occurred at or near Fairbanks and on or about February 22, 1993;
Second, that the defendant acted with intent to promote or facilitate the commission of the offense; and
Third, that the defendant aided or abetted another person in planning or committing the offense.
If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you shall find the defendant guilty.
If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you shall find the defendant not guilty.

Second, regardless of what the prosecutor said, it was clear from the State's theory of the crime that the jury would have to receive an instruction describing accomplice liability. Under AS 11.41.510(a), the crime of robbery requires (1) an act of assault and (2) a taking of property or an attempt to take property. Even under the State's primary theory of the crime (that Baker struck the pizza delivery person), it was Stanfill and Frazier who grabbed the pizzas and ran off with them. Thus, to evaluate Baker's guilt, the jury would necessarily have to receive instruction on the rules governing Baker's liability for Stanfill's and Frazier's acts of taking the property.

Alaska Criminal Rule 30(b) declares that a trial judge "shall instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict". Under this rule, and under the facts of this case, it was obvious that the jury would have to receive instruction on accomplice liability (despite the prosecutor's announcement that he felt no such instruction was needed).

For these reasons, we hold that it was not error for the trial judge to instruct the jury on accomplice liability and it was not error for the prosecutor to argue that theory of liability to the jury.

■ In a related argument, Baker contends that the State failed to prove beyond a reasonable doubt that Baker was the one who struck the pizza delivery person. To the extent that Baker is asserting that the State failed to adequately corroborate Stanfill's and Frazier's testimony that Baker was the third robber, this contention is addressed in the next section of this opinion. To the extent that Baker is asserting that the evidence did not allow the jury to resolve, beyond a reasonable doubt, whether Baker was the one who struck the delivery person or was, instead, one of the other two non-assaulting robbers, the answer to Baker's argument is that it was not necessary for the jury to resolve this issue. *Perkins & Boyce, supra*, p. 752; *Totemoff v. State*, 866 P.2d at

129.[7] *See also State v. James*, 698 P.2d 1161 (Alaska 1985).

■ Baker next argues that, even if it was proper to instruct the jury on accomplice liability, the particular instruction that was given (Instruction 9) was flawed. Because Baker did not object to this instruction at trial, he must prove plain error. *Estate of McCoy*, 844 P.2d 1131, 1134 (Alaska 1993); *Haskins v. Shelden*, 558 P.2d 487, 492 (Alaska 1976); *see Colgan v. State*, 711 P.2d 533, 534 (Alaska App.1985). The test for plain error in this context is explained in *McCoy*:

> Plain error will be found only when an erroneous instruction creates "a high likelihood that the jury followed an erroneous theory[,] resulting in a miscarriage of justice." *Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87, 91 (Alaska 1974). As this court more recently stated, the ultimate determination in analyzing plain error in jury instructions is simply whether a correct instruction would have likely altered the result. *Conam Alaska v. Bell Lavalin*, 842 P.2d 148, 153 (Alaska 1992) (citations omitted).

*Estate of McCoy*, 844 P.2d at 1134.

Baker contends that Instruction 9 gave the jury only "a broad definition of accomplice liability", that this instruction failed to focus the jury on "the elements of the offense of robbery under an accomplice theory", and that this instruction "did not instruct the jury that they must be unanimous as to all the elements of the offense" and that the State "must prove all elements of the offense under an accomplice theory beyond a reasonable doubt".

■ The elements of robbery remain the same whether the act of robbery is committed personally by the defendant or by another for whose conduct the defendant is accountable. If the State intends to prove the defendant's guilt of robbery by relying on AS 11.16.110(2) to establish the defendant's accountability for acts performed by another person, the State must additionally prove the

7. *See also United States v. Peterson*, 768 F.2d 64; *Lampkins v. Gagnon*, 539 F.Supp. 359; *State v. Wixon*, 631 P.2d 1033; *Holland v. State*, 280 N.W.2d 288; *People v. Burgess*, 240 N.W.2d 485; *State v. Carothers*, 525 P.2d 731.

elements listed in AS 11.16.110(2): that the defendant solicited the other person to commit the offense, or aided or abetted the other person in planning or committing the offense, or caused an innocent person to engage in the proscribed conduct; and that the defendant did so "with intent to promote or facilitate the commission of the offense".

While Instruction 9 does not track the language of AS 11.16.110(2), it adequately informed the jury of the elements of complicity liability. The instruction told Baker's jury:

> Responsibility for the crime of another will attach only upon a showing that an individual had knowledge of the criminal enterprise and specifically intended by his/her conduct, to aid, abet, assist, or participate in the criminal enterprise. ... [I]t is necessary that the person ... participate in [the venture] as ... something that he or she wishes to bring about, and that the person seek by his or her actions to make it succeed. An accomplice shares the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the offense.

This is essentially the same instruction that we held not to be plain error in *Hansen v. State*, 845 P.2d 449, 459 (Alaska App.1993). We adhere to our prior ruling; it was not plain error for the trial judge to give Instruction 9 in Baker's case.

 It is true, as Baker points out, that Instruction 9 does not specifically state that these elements of complicity must be proved beyond a reasonable doubt. However, jury instructions are not to be viewed in isolation; instead, we must assess the group of instructions as a whole. *See Guertin v. State*, 854 P.2d 1130, 1133 (Alaska App.1993) (jury instructions are to be "read as a whole and in a common-sense manner"); *Coney v. State*, 699 P.2d 899, 905 (Alaska App.1985) (disapproving a specific instruction but finding that the instructions, read as a whole, cured the error).

 In Baker's case, Instruction 15 told the jury that they had to be "satisfied beyond a reasonable doubt of the defendant's guilt", and that "[t]he burden of proving the defendant guilty beyond a reasonable doubt always rests upon the prosecution [and] never shifts [during] the trial". Instruction 9 does not address the burden of proof; it thus contains nothing to contradict the mandate of Instruction 15. Regarding the requirement of unanimity, Instruction No. 26 told the jury that their verdict must be "unanimously agreed upon". We conclude that there was no plain error in these jury instructions.

*Did the State Adequately Corroborate the Testimony of Accomplices Stanfill and Frazier?*

In Alaska, a criminal defendant may not be convicted based solely on the testimony of an accomplice to the crime. AS 12.45.020 declares:

> A conviction shall not be had on the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the crime[.]

In *Brown v. State*, 693 P.2d 324 (Alaska App.1984), this court explicated this legal rule:

> [I]n determining the sufficiency of corroborating evidence, the evidence need not be considered "by itself and without the aid of the testimony of the accomplice." To meet the statutory requirement, the state must show no more than that the corroborating evidence strengthens or confirms the testimony of the accomplice; it must induce "in the mind of the jurors a rational belief that the accomplice was speaking the truth when he implicated the defendant in the criminal event."

*Brown*, 693 P.2d at 329 (quoting *Oxenberg v. State*, 362 P.2d 893, 897 (Alaska 1961), *cert. denied*, 368 U.S. 56, 82 S.Ct. 189, 7 L.Ed.2d 128 (1961)).

Baker argues that, although the State may have proved that a robbery occurred, the State failed to corroborate Stanfill's and Frazier's testimony that the third participant in the robbery was Baker. He points out that the victim of the robbery was unable to

identify the man who struck him, other than to assert that it was a light-complexioned black man wearing a ski mask.

■ We assume, for purposes of deciding this case, that the testimony of one accomplice can not be used to corroborate the testimony of another. Nevertheless, we conclude that the State presented sufficient corroborating evidence to support Baker's conviction.

Although the victim of the robbery (James Seymour) could not identify Baker, he did corroborate Stanfill's and Frazier's testimony that there was a third robber who wore a ski mask. Stanfill's sister testified that Stanfill, Frazier, and Baker were together at the Stanfill apartment shortly before the robbery occurred. She also stated that the three men returned to the apartment together and at that time Stanfill and Frazier were carrying four large pizzas. Stanfill's mother testified that, while visiting a neighbor, she heard a report of the robbery and returned home; there she found Stanfill, Frazier, and Baker, along with the fresh remains of the pizzas.

Using the test set forth in *Oxenberg* and *Brown*, we conclude that this evidence was sufficient to support a rational belief that Stanfill and Frazier were speaking the truth when they implicated Baker in the robbery. Non-accomplice testimony supported the assertion that there was a third robber, it placed Baker in the company of Stanfill and Frazier both shortly before and immediately after the robbery, and it established that Baker accompanied Stanfill and Frazier when the three men returned to the apartment to enjoy the fruits of the robbery. *See Gill v. State,* 873 S.W.2d 45, 48–49 (Tex.Crim. App.1994); *Cockrum v. State,* 758 S.W.2d 577, 581–82 (Tex.Crim.App.1988), *cert. denied,* 489 U.S. 1072, 109 S.Ct. 1358, 103 L.Ed.2d 825; *Jackson v. State,* 451 So.2d 435, 437 (Ala.1984).

### Baker's Sentence Appeal

Baker challenges the sentence he received for the crime of second-degree robbery. Second-degree robbery is a class B felony. AS 11.41.510(b). Because Baker was a third-felony offender for presumptive sentencing purposes, he faced a presumptive term of 6 years' imprisonment. AS 12.55.125(d)(2). The superior court found two aggravating factors: that the victim of the robbery had sustained physical injury, AS 12.55.155(c)(1), and that Baker was on felony probation when he committed the robbery, AS 12.55.155(c)(20).

■ Just before he was sentenced in the present case, Baker was sentenced to a composite term of 6 years, 10 months' imprisonment in two unrelated cases. Because he had already received this substantial term of imprisonment, Baker asked Superior Court Judge Jay Hodges to make his robbery sentence concurrent with the sentences for his other crimes. However, Judge Hodges sentenced Baker to an additional 3 years to serve. Thus, Baker's total sentence is 9 years, 10 months' imprisonment.

On appeal, Baker renews his argument that Judge Hodges should have given him a completely concurrent sentence—that it was clearly mistaken to impose any portion of his robbery sentence consecutively to his previous sentences for his other crimes. We do not agree. Baker was on felony probation when he committed this robbery. That probation had been repeatedly revoked, both for drug use and for new crimes. Moreover, while Baker was on bail release awaiting trial for this robbery, he committed yet another felony (first-degree burglary). Judge Hodges found that Baker's potential for rehabilitation was "guarded ... at best", and that Baker's role in the robbery, his willingness to inflict injury on the victim, and his history of felonies all supported the finding that Baker constituted a "danger to the public". Judge Hodges concluded that additional time to serve was required in order to deter Baker from future crimes as well as to affirm societal norms.

Baker does not seriously contest Judge Hodges's findings. Instead, he rests his case on the fact that his longest previous sentence was 2½ years' imprisonment. Baker argues that, before the superior court could sentence him to a composite term of approximately 10 years' imprisonment, the court was obliged to first try a lesser sentence—in this case, 6

years, 10 months. Baker argues that this lesser sentence would have adequately protected the public.

Given Baker's record and Judge Hodges's findings, we conclude that Judge Hodges was not clearly mistaken when he sentenced Baker to an additional 3 years to serve for the robbery in this case. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

*Conclusion*

The judgement of the superior court is AFFIRMED.