NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

M.H.,

　　　　　　　　　　　Appellant,

　　　　　v.

STATE OF ALASKA,

　　　　　　　　　　　Appellee.

Court of Appeals No. A-12332
Trial Court No. 3PA-14-036 DL

O P I N I O N

No. 2525 — September 23, 2016

Appeal from the Superior Court, Third Judicial District, Palmer, Gregory Heath, Judge.

Appearances: Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. June Stein, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

Under Alaska Delinquency Rule 21(a), delinquency proceedings are tried to the court unless the juvenile requests a jury trial. Rule 21(a) also states that a request

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

for jury trial must be made "no later than 20 days before any scheduled trial date" (unless there is good reason to allow the request to be made with less advance notice). The primary question presented in this appeal is how to interpret the phrase "scheduled trial date".

In Alaska, most criminal and delinquency cases are not given a specific date for trial until just before they are actually tried.

Instead, if a case is to be tried, it will be placed among a group of cases that are presumptively ready for trial, and the entire group of cases will be scheduled for a status hearing or conference. This status hearing or conference is sometimes called a "trial call", or a "calendar call", or simply a "scheduling hearing". But regardless of its label, the function of this court proceeding is (1) to determine which cases among the group are, indeed, ready for trial, and (2) to establish the order in which the individual cases will be tried. Generally, the first case to be tried is given a date certain, and the others are put in a "trailing" status. That is, those cases are brought to trial whenever the preceding case is resolved and the assigned judge becomes available.

For simplicity's sake, we will refer to this court proceeding as a "trial call" in this opinion.

The issue in this appeal is whether the requirement of 20 days' advance notice for requesting a jury trial should be calculated based on the date of the trial call, or whether this deadline should be calculated based on the specific trial date and time that the court sets later, as the court works its way through the list of cases to be tried.

For the reasons explained in this opinion, we conclude that when a minor's case is not given a specific trial date at the very beginning, but is instead scheduled for a trial call, the 20 days' advance notice specified in Delinquency Rule 21(a) is calculated based on the date of that trial call.

*Underlying facts*

The State filed a delinquency petition against M.H., alleging that he had committed theft. In November 2014, the superior court set M.H.'s delinquency case for a trial call on January 6, 2015.

The attorneys handling M.H.'s delinquency case appeared at the trial call on January 6th, and they returned to court on January 8th. At that time, they announced that M.H.'s case had not been resolved, and that M.H. still wanted to go to trial. However, M.H.'s attorney also stated that she wished to raise a suppression issue.

The court allowed M.H.'s attorney to file the suppression motion the next day (January 9th). At that time, the prosecutor assigned to M.H.'s case noted that M.H. had not filed a request for a jury trial, so the prosecutor suggested that the court could resolve all of the pending matters by holding a combined evidentiary hearing and bench trial the following week (on January 15th).

In response to the prosecutor's suggestion, M.H.'s attorney declared that M.H. wanted a jury trial. The superior court denied this request as untimely.

On January 15th, the court held the evidentiary hearing and denied M.H.'s suppression motion. The court then proceeded to hold a bench trial on the underlying allegation against M.H. At the conclusion of this trial, the court found that M.H. had committed the charged theft, and the court adjudged M.H. to be a delinquent minor.

2525

*Why the 20 days' advance notice specified in Delinquency Rule 21(a) is to be calculated based on the date of the trial call*

As we explained earlier, Delinquency Rule 21(a) states that a minor's request for a jury trial normally must be made "no later than 20 days before any scheduled trial date".

M.H. argues that when a delinquency case is included among the group of cases at a trial call, the phrase "scheduled trial date" refers to the specific trial date and time that the court later establishes for the delinquency case as the court works its way through the group of cases to be tried.

M.H. acknowledges that, given the way trial calls work, it is exceedingly rare for litigants to have more than a few days' notice of their specific trial date. Thus, as a practical matter, if a minor's case is among the group of cases scheduled for a trial call, it will be impossible for the minor to comply with Rule 21(a)'s requirement that the request for jury trial be made at least 20 days in advance of the trial date. M.H. argues that since compliance with the rule is impossible, he and all other similarly situated minors should be excused from the requirement of giving 20 days' notice.

But if we were to interpret Delinquency Rule 21(a) in the way M.H. suggests, we would essentially delete the 20 days' notice requirement for all delinquency cases that are scheduled for a trial call. This interpretation of the rule would be in direct conflict with the Alaska Supreme Court's purpose in enacting the 20 days' notice requirement.

The legislative history of Rule 21(a) shows that the supreme court established the requirement of 20 days' advance notice only after the court checked with the area court administrators of Alaska's four judicial districts to make sure that 20 days would give court administration adequate time to summon jury panels and make the

other preparations needed for jury trials, especially in smaller court locations.[1] The purpose of requiring 20 days' advance notice would be completely defeated if we adopted M.H.'s proposed interpretation of the rule.

We therefore hold that when a delinquency case is among the group of cases scheduled for a trial call, the 20 days' advance notice required by Delinquency Rule 21(a) is to be calculated based on the date of that trial call.

*The superior court did not abuse its discretion when it denied M.H.'s request for a relaxation of the 20 days' notice requirement*

M.H. argues, in the alternative, that even if he needed to file his request for jury trial 20 days in advance of the trial call, the superior court nevertheless should have honored his tardy request for a jury trial because there was good cause to excuse his failure to meet the 20-day deadline.

In *I.J. v. State*, 182 P.3d 643 (Alaska App. 2008), this Court adopted a set of four criteria that the superior court should use when deciding whether to allow a minor to file a tardy request for jury trial in a delinquency matter. These criteria are:

> (1) [whether] the request, although untimely ... , was nevertheless reasonably prompt given the litigation history of the case; (2) [whether] the request was made long enough in advance of the trial that granting the request would not pose a problem for the court's scheduling and administrative handling of the case; (3) [whether] there [is] reasonable justification for not holding the [minor] to [their] earlier

---

[1] See the January 13, 2010 minutes of the supreme court's standing committee on the Children in Need of Aid and Delinquency Rules, as well as the e-mails sent by the area court administrators to Justice Morgan Christen which are contained in the Court Rules Attorney's file for Supreme Court Order No. 1723 (March 5, 2010).

acquiescence in a non-jury trial; and (4) [whether] the record demonstrate[s] that the [State] would suffer no prejudice on account of the late request for a jury trial.

*Id.* at 647.

Turning to the first two criteria — whether the request for jury trial was reasonably prompt, and whether it was made far enough in advance that it would pose no problem for the court — we note that M.H.'s attorney entered her appearance on September 24, 2014. At a pre-trial conference held on November 10, 2014, the defense attorney announced that M.H.'s parents had rejected the State's offer of settlement, and that the case would therefore have to be set for trial. In response to the defense attorney's announcement, the superior court put M.H.'s case on the trial call list for January 6, 2015. At this time, the defense attorney did not tell the court that M.H. wanted a jury trial.

When the parties appeared at the trial call on January 6th, both attorneys announced that they were ready for trial, and the court set the case for a further scheduling hearing on January 8th. On January 8th, the defense attorney told the court that she wanted to file a suppression motion, so the court scheduled a follow-up hearing for the next day (January 9th). Then, when the parties appeared in court on January 9th, M.H.'s attorney stated for the first time that M.H. wanted a jury trial.

Given the litigation history of M.H.'s case, this request was not reasonably prompt. Moreover, honoring this request would almost inevitably put pressure on local court administrators, and it could well disrupt the court's own processing of the other trial call cases.

The third criterion is whether there was reasonable justification for not holding M.H.'s attorney to her earlier acquiescence in a bench trial.

Even though the phrase "acquiescence in a bench trial" could be interpreted to mean an express agreement to be tried by the court rather than by a jury, that is not how the phrase was used in *I.J.* The facts of *I.J.* show that when the court spoke of the minor's "acquiescence" in a bench trial, the court simply meant the minor's failure to request a jury trial within the time frame specified by the rule. *See id.*, 182 P.3d at 647.

In M.H.'s case, it appears that the defense attorney's reason for not requesting a jury trial earlier is that she misunderstood or was unaware of Delinquency Rule 21(a), and that she misunderstood local court procedures.

The defense attorney told the court that she thought she had requested a jury trial earlier. But there is nothing in the record to support this assertion. It appears that the attorney's memory of the prior proceedings was faulty.

The defense attorney also told the court that she thought M.H.'s case was automatically scheduled for a jury trial when the court announced that M.H.'s case would be included among the group of cases scheduled for the trial call on January 6th. But the judge explained that he included *all* of his trials — both jury trials and bench trials — when he compiled his lists for trial calls. And there is nothing in the record that would have led the defense attorney to think otherwise.

Given this record, the superior court could reasonably conclude that the defense attorney failed to offer a good justification for allowing her to request a jury for the first time on the eve of trial.

The remaining criterion is whether the record demonstrates that the State would not be prejudiced by the tardiness of the defense attorney's request for a jury trial. The State makes several arguments regarding how a jury trial would have prejudiced the prosecutor and the State's witnesses. It is unclear how much of this asserted prejudice is due to the lateness of the defense attorney's request, as opposed to the fact that the defense attorney was requesting a jury trial at all.

But in any event, the question is whether the superior court's decision was an abuse of discretion, given all four of the criteria listed in *I.J.*[2] We conclude that the superior court did not abuse its discretion when it denied the defense attorney's late request for a jury trial.

> *M.H.'s argument that the State failed to present adequate evidence to corroborate the testimony of his accomplice*

AS 12.45.020 states that a conviction can not rest on the testimony of an accomplice unless the accomplice's testimony "is corroborated by other evidence that tends to connect the defendant with the commission of the crime". The statute further provides that corroboration "is not sufficient if it merely shows the commission of the crime or the circumstances of [its] commission."

At M.H.'s trial, the State's case included the testimony of another minor, V.H., who testified that he and M.H. jointly committed the charged theft. V.H. was therefore an "accomplice" within the meaning of AS 12.45.020, and the State was required to corroborate his testimony. On appeal, M.H. argues that the trial evidence failed to adequately corroborate V.H.'s testimony.

---

[2]     *See Booth v. State*, 251 P.3d 369, 373 (Alaska App. 2011):

> The "abuse of discretion" standard applies to situations where (a) the law does not specify a particular "right" answer or response to the situation, but instead only specifies the factors or criteria that a judge should consider, and (b) reasonable judges, given the same facts and applying the correct criteria, might come to differing conclusions about how to deal with the problem. In other words, the "abuse of discretion" standard of review applies to situations where the law allows or requires the judge to exercise discretion — to reach a decision by considering and weighing various factors, and then doing what seems most fair under the circumstances.

Alaska appellate cases interpreting AS 12.45.020 hold that the corroborating evidence does not need to be viewed in isolation from the accomplice's testimony. Rather, the corroborating evidence should be viewed in conjunction with the accomplice's testimony,[3] and the corroborating evidence (and all inferences that can reasonably be drawn from it) should be viewed in the light most favorable to the verdict.[4] The statutory requirement of corroboration is satisfied "when the corroborating evidence tends to induce ... a rational belief that the accomplice was speaking the truth when he implicated the defendant in the criminal event."[5]

Although the statute declares that the corroborating evidence is not sufficient "if it merely shows the commission of the crime or the circumstances of [its] commission", the corroborating evidence does not need to independently establish the defendant's guilt, nor does it need to corroborate every element of the offense.[6] It is sufficient if the corroborating evidence "tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness, who must be corroborated, is telling the truth."[7]

M.H. was accused of stealing property from a school locker room. According to V.H.'s testimony, he and M.H. went to the school to pick up some shoes. After the two boys entered the locker room, V.H. used the bathroom, and then he and

---

[3]  *Pulakis v. State*, 476 P.2d 474, 476 (Alaska 1970).

[4]  *See Silvernail v. State*, 777 P.2d 1169, 1172 (Alaska App. 1989).

[5]  *Pulakis v. State*, 476 P.2d 474, 476 (Alaska 1970), quoting *Dimmick v. State*, 473 P.2d 616, 617 (Alaska 1970).

[6]  *See Silvernail v. State*, 777 P.2d 1169, 1172 (Alaska App. 1989); *Brown v. State*, 693 P.2d 324, 329 (Alaska App. 1984).

[7]  *Christy v. United States*, 17 Alaska 107, 261 F.2d 357, 359-60 (9th Cir. 1958) (original citations omitted).

M.H. started looking through the lockers.  V.H. testified that he found an iPod and an iPhone in the pockets of some pants.  M.H. took the iPod and V.H. took the iPhone, which the boys apparently planned to "jailbreak". [8]

Upon leaving the school, the two boys first went to V.H.'s house, and then they went to M.H.'s house because M.H. had a computer that they were going to use to jailbreak the iPhone.  But they were unable to alter the iPhone, so V.H. left the iPhone with M.H.  At trial, V.H. testified that he thought M.H. had thrown these items away.

To corroborate V.H.'s testimony, the State presented school security footage which showed M.H. and V.H. entering the school, going to the locker room, and spending several minutes there.  In addition, the State introduced a written account of the incident that M.H. furnished to the school safety coordinator.  In this statement, M.H. declared that he was present in the locker room with V.H., and he watched V.H. steal various items from the lockers, but he (M.H.) did not participate in the theft:

> I came to school to get my school stuff because I had missed a couple of days before the break so I went into the locker room to get it and [V.H.] was with me.  I got my stuff and he was looking through all the lockers and then he told me he found a phone and I didn't really say anything about which I should of.  He also stole more than one thing he [took] somebodys glasses, shoes, a backpack and some other stuff.  I didn't steal anything and I don't have anything that is stolen.  I was just with him and I should of said something about it but I didn't.  I don't really know what he did with the

---

[8]  The term "jailbreaking" refers to the removal of the software restrictions imposed by iOS (the Apple operating system) on devices such as the iPhone and the iPad.  Jailbreaking allows a user to access the root level of the iOS file system and its file manager — thus enabling the user to download and install applications and other software not available through the official Apple App Store.

*See* https://en.wikipedia.org/wiki/IOS_jailbreaking

stuff he stole but a lot of the stuff he has he doesn't have anymore so I'm guessing he sold them and I had nothing to do with that also.

Turning to the question of whether this corroborating evidence was sufficient to meet the requirements of AS 12.45.020, we note that the facts of M.H.'s case are similar to the facts of *Baker v. State*, 905 P.2d 479 (Alaska App. 1995).

The defendant in *Baker* was accused of being one of the three people who robbed a pizza delivery man. Two of the robbers testified that Baker was the third participant in this crime. The State's corroborating evidence showed that three people participated in the robbery, that Baker was seen both before and after the crime in the company of the other two robbers, and that Baker and the other robbers had several boxes of pizza after the robbery. This Court held that this corroborating evidence "was sufficient to support a rational belief that [the two accomplices] were speaking the truth when they implicated Baker in the robbery." 905 P.2d at 491.

We likewise find that the corroborating evidence in M.H.'s case was sufficient to support a rational belief that V.H. was speaking the truth when he implicated M.H. in the theft.

*Conclusion*

The judgement of the superior court is AFFIRMED.